UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

PATRICK FOOR,     ) No. ED CV 10-00836-VBK
          )
     Plaintiff, ) MEMORANDUM OPINION
          ) AND ORDER
  v.       )
          ) (Social Security Case)
MICHAEL J. ASTRUE,   )
Commissioner of Social  )
Security,       )
          )
     Defendant. )
_____)

   This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

   Plaintiff raises the following issues:

   1.  Whether the Administrative Law Judge ("ALJ") properly

considered Plaintiff's pain testimony, and otherwise failed
to provide adequate reasons for his finding that Plaintiff's
testimony was not credible;

2.    Whether the ALJ properly considered lay witness testimony
from Plaintiff's girlfriend; and

3.    Whether the ALJ properly assessed the compounding effects of
Plaintiff's pain, injuries and impairments, including his
diabetes and pain medication, on his ability to sustain
gainful employment.

(JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of
fact and conclusions of law.  After reviewing the matter, the Court
concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY EVALUATED PLAINTIFF'S PAIN TESTIMONY**

In Plaintiff's first issue, he asserts that the ALJ failed to
properly evaluate his subjective pain testimony.  Indeed, Plaintiff's
description of his pain is so extreme that, as he concedes in his
portion of the JS, "If credited, plaintiff's testimony would require
a finding of disability." (JS at 4.)

In the course of Plaintiff's work as a petroleum technician, he
suffered a series of on-the-job injuries which eventually led him to
stop working.  He described these as a "crushed" right elbow which he
suffered in 1987; a "broken" neck in 1990; and low back and left wrist
injuries which he sustained in 2005 or 2006. (See AR at 13.)  He had
right knee surgery in 1999.  He developed continuing pain in his right

elbow.  He had surgery on his right elbow in April 2005 which at first helped, but he asserts that he developed arthritic right elbow pain which increased over time.  He continued treating for an increasing symptom of neck pain, and various surgeons considered surgery which would fuse four of his neck vertebrae in 2007.  Plaintiff declined because he was afraid of the risks.  Despite this pain, he continued to work, but in 2005, he incurred two work-related injuries to his left hand and lower back, which led to radiating leg and arm pain, ulnar nerve entrapment in his left elbow, and tendinitis in his left wrist. (AR 11-13, 29, 204, 390.)

At the administrative hearing on June 16, 2008 (AR 18-54), substantial attention was devoted to the issue of pain.  Plaintiff indicated he spends most of his time in bed, and even so, he suffers constant excruciating neck pain. (AR 31.)  He takes medication which only helps a little bit "mentally." (Id.)  He has throbbing pain in his right elbow because of what he asserts to be severe arthritis in that joint.  His elbow locks up on him, preventing him from doing any kind of pushing or pulling, and even brushing his teeth or shampooing his hair results in excruciating pain.  He also has constant radiating pain in his left arm which sometimes causes him to lose his grip. (AR 32.)  He attributes these symptoms to a work injury which he indicates "locks my elbow up and I can't straighten it.  Or my bones in my hands and everything are like somebody smashed it with a sledgehammer." (AR 33.)

Due to another injury Plaintiff sustained while working, he has been subsequently afflicted with constant back pain for which he takes medicine. (AR 35.)  This pain is a "pinching, burning, just a real soreness." (AR 36.)  Any activity increases the level of his pain.

1  (Id.)  Even lying in bed makes it worse. (Id.)

2      For his pain, Plaintiff takes the medications Ultram, Lyrica, and

3  Ativan for sleeping. (Id.)  In addition he takes Celebrex. (Id.)  He

4  complains of side effects such as confusion from these medications.

5  (AR 37.)

6      As a result of this onslaught of pain, Plaintiff says that he

7  mostly lays in bed during the day and just tries to move around but

8  otherwise, he is "pretty helpless." (AR 39.)

9      The ALJ assessed a residual functional capacity ("RFC") to

10 perform light work as defined in 20 C.F.R. §§404.1567(b) and

11 116.967(b), except that Plaintiff is unable to lift more than 10

12 pounds frequently with his left (non-dominant) hand; he is unable to

13 do activities such as climbing ladders, ropes or scaffolds; he can

14 only occasionally bend his right (dominant) elbow if the range of

15 movement exceeds 40 to 95 degrees; and he is unable to perform skilled

16 work due to possible medication side effects. (AR 12.)

17     With regard to Plaintiff's complaints of pain, the ALJ evaluated

18 Plaintiff's credibility, and ultimately found that Plaintiff was not

19 credible to the extent that his pain complaints are inconsistent with

20 the RFC assessment. (AR 14.)

21     The applicable law which binds the ALJ in the credibility

22 analysis concerning excess pain is well known, and is encompassed in

23 a comprehensive series of regulations and cases. The underlying

24 regulation is 20 C.F.R. §404.1529, which attempts to reconcile

25 potential conflicts between subjective pain testimony and objective

26 evidence.  Thus, it clearly indicates that a claimant's complaints of

27 subjective pain will not be rejected solely because the available

28 medical evidence does not substantiate the claimant's statements.  On

4

1  the other hand, the Commissioner will evaluate pain statements in
2  relation to the objective medical evidence and other evidence.

3      Encompassed within this regulation, and reiterated in Social
4  Security Ruling ("SSR") 96-7p are a series of factors which must be
5  evaluated, which include activities of daily living ("ADL"),
6  medication and side effects of medication, treatments received,
7  precipitating and aggravating factors, the location, duration,
8  frequency and intensity of pain or other symptoms, and other factors
9  concerning functional limitations and restrictions.

10      A reviewing court must determine that the credibility finding is
11  sufficiently specific so that the reasons underlying it are clear, and
12  properly supported by the record.   <u>See</u> SSR 96-7p, and <u>Thomas v.</u>
13  <u>Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

14

15      **A.   <u>Analysis</u>**.

16      The ALJ found that Plaintiff does have underlying medically
17  determinable physical impairments which could reasonably be expected
18  to produce pain or other symptoms.  Having passed this first step, the
19  ALJ then evaluated the intensity, persistence and limiting effects of
20  these symptoms based on the credibility factors set forth in cases and
21  regulations, which the Court has briefly summarized above.

22      The ALJ focused in some detail on inconsistencies between the
23  objective medical evidence and Plaintiff's extreme pain complaints.
24  As noted, this cannot be the sole reason to reject a claimant's
25  credibility, but it is certainly highly relevant.  In doing so, the
26  ALJ correctly noted (and Plaintiff has not disputed this), that
27  several of his doctors, including his workers compensation doctors,
28  did not find him to be totally disabled.  In July 2007, Plaintiff was

examined by orthopedic surgeon Dr. Uppal, an Agreed Medical Examiner ("AME"), in the workers compensation case, who determined that Plaintiff was capable of working with no heavy lifting with his right or left arm (AR 13, 353.)   This opinion was consistent with an examination conducted in February 2007 by Dr. To, functioning as a consultative internal medicine examiner ("CE").   Dr. To found that Plaintiff was capable of performing light level work.   In particular, with regard to Plaintiff's neck pain, Dr. To indicated that Plaintiff's range of motion was decreased and he complained of range of motion pain.   With regard to the multiple joint pains of which Plaintiff complained, Dr. To found no evidence of deformity, swelling or tenderness.   Further, the ranges of motion were all normal.   As to back pain, upon physical examination, Dr. To concluded that Plaintiff's back pain does not elicit true findings of nerve root irritation.   There is a decrease in the range of motion, and Plaintiff complained of some range of motion pain.   Considering his examination, other than restricting Plaintiff from working with heavy and moving machinery, he assessed no relevant limitations. (AR 288.)

As to Plaintiff's postponement of neck surgery, his argument is that the Court should reject the ALJ's reliance on this factor in the credibility analysis because Plaintiff feared undergoing this type of surgery which he considered possibly dangerous.   Certainly, however, the Court cannot outright reject the fair conclusion to be drawn from Plaintiff's failure to engage in surgery that he must be able to tolerate what he describes as excruciating pain which prevents him from even getting out of bed most of the time.   While any surgery may carry risks, and may instill a feeling of anxiety or even fear, the articulation of such does not remove the issue from fair

consideration, especially in a case where an individual is claiming such an extreme level of pain that it prevents him from performing even the most conservative ADLs.

With regard to medications, while Plaintiff asserted during the hearing that they were not totally effective, the Court must give credence to the ALJ's evaluation that because Plaintiff had been on these medications for such a long period of time, a fair inference can be drawn that they are somewhat helpful. Indeed, the ALJ acknowledged that because of side effects of medication, Plaintiff could not perform his past relevant work, although the record only indicates that Plaintiff suffered side effects from Vicodin, but not the other medications. (AR 36, 377-378, 382, 390, 395.) To the extent that Plaintiff complains of side effects from his other medications, such complaints are not supported by objective evidence in the record. In any event, the ALJ allowed for this in determining Plaintiff's RFC.

It was also not unreasonable for the ALJ to indicate that there was some lack of corroborating objective medical evidence in the record. There is a citation in the Decision to an MRI scan and x-ray of Plaintiff's left hand which resulted in normal findings (AR 12, 233, 365); a 2005 x-ray of his left wrist which also was normal (AR 11, 242); thus, the ALJ found that these normal test results were inconsistent with the extreme pain complaints which Plaintiff made. (AR 14.) In December 2006, Plaintiff underwent an MRI scan which revealed that he had degenerative disc disease with mild stenosis. (AR 12, 345, 347.) In February 2008, during an examination, Plaintiff had full range of motion in his neck, and no evidence of any muscle spasm. (AR 398.) During the same examination, which was conducted by his primary care physician, Plaintiff had full muscle strength in his

1  upper extremities and his lower extremities. (AR 399.) It is difficult
2  to conceive that in individual who claims that brushing his teeth or
3  shampooing his hair causes excruciating and unbearable pain would, on
4  multiple examinations, be found to have such normal findings.  Similar
5  results were obtained on testing of Plaintiff's lower back. (Id.)

6      The Court notes that the ALJ also relied upon possible secondary
7  motivation, based on Plaintiff's receipt of worker's compensation
8  income which possibly reflected upon his motivation to work. (AR 14.)
9  The Court considers this to be a disfavored factor which should only
10 be cited where there is strong evidence supporting it.  Many
11 individuals who are injured on the job apply for and receive worker's
12 compensation benefits, and that is their right.  It does not mean that
13 they have a motivation not to work.  It also does not mean that
14 seeking benefits from the Social Security Administration can be
15 equated to a secondary motive not to work.  Social Security benefits
16 are not welfare, but can be awarded based upon a individual's
17 qualifying work.  The Court does not intend to rely upon the ALJ's
18 citation of this factor, but on the other hand, the credibility
19 analysis in the ALJ's decision is well-supported by other factors
20 which were properly relied on in the credibility evaluation.

21     Based on the foregoing, the Court rejects Plaintiff's first
22 issue.

23

24                          **II**

25     **THE ALJ PROPERLY CONSIDERED TESTIMONY FROM**

26     **PLAINTIFF'S GIRLFRIEND, DEBRA SUE FOSTER**

27     At the administrative hearing, testimony was taken from Debra Sue
28 Foster, Plaintiff's live-in girlfriend.(AR 44-47.)  This is noted in

the Decision, where the ALJ reiterated her testimony that she does all of the driving and cooking because Plaintiff is unable to turn his head and use his hands and arms; that she does most of the household chores; and that Plaintiff can only do light chores when she is not at home. (AR 15.)   Plaintiff also notes that Ms. Foster's testimony included her observations that Plaintiff was unable to turn his head and use his hands and arms. (JS at 18.)

The ALJ may only reject testimony of a lay witness if sufficient reasons are provided in the decision.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  Here, the ALJ found Ms. Foster's testimony credible, but indicated that "it does not establish that the claimant is unable to work.   The limitations described by the witness are incorporated into the claimant's residual functional capacity as reflected above." (AR 15.)  It would not be reasonable to expect the ALJ to have interpreted these statements in a completely literal sense, because one would then have to conclude that Plaintiff is unable to turn his head or use his hands and arms. Even Plaintiff did not testify to this extreme level of limitation, and certainly, the objective medical evidence, which the Court has summarized in some detail, fails to support it in any substantial degree.   Thus, to the extent that the ALJ incorporated the lay witness's testimony into the RFC determination, there is no error.  Further, to the extent that extreme limitations were not accepted, the Court finds no error, because as with Plaintiff's own description of his pain and limitations, these statements are only credible to the extent of the RFC determined in the decision.

//

//

# III

## THE ALJ PROPERLY ASSESSED THE COMPOUNDING EFFECTS

## OF PLAINTIFF'S PAIN, INJURIES AND IMPAIRMENTS

In Plaintiff's third issue, he asserts, effectively, that the ALJ failed to account for the evidence as a whole, instead selectively pointing to and relying upon certain evidence which supported his conclusion that Plaintiff is not disabled.  For example, Plaintiff notes that the ALJ improperly relied upon the February 1, 2007 CE of Dr. To, who "incredibly" found that Plaintiff had normal ranges of motion for his joints. (JS at 22, citing AR 287.)  But Plaintiff overlooks the fact that even his primary treating physician, in a report of February 20, 2008, came to almost identical conclusions. (AR 394-401.)

Plaintiff further asserts that the reports upon which the ALJ relied did not consider Plaintiff's "credible pain testimony." (JS at 22.)  But as the Court has noted, Plaintiff's pain complaints were found not totally credible for good and sufficient reasons, as set forth in the Decision.  Plaintiff's final contention, that the worker's compensation physicians only focused on his work-related injuries, fails to account for the fact that these evaluations were consistent with those reached by non-worker's compensation physicians, such as Dr. To.

To the extent that Plaintiff asserts there is error with regard to the testimony of the vocational expert ("VE"), the Court does not agree, based upon its own review of the record.  After the ALJ posed the hypothetical question, the VE asked for clarification which was provided. (AR 50-51.)  Thereafter, the VE identified jobs that Plaintiff could perform which were slightly eroded based upon

10

Plaintiff's RFC. (AR 51.)  The jobs identified by the VE did take into account the limitations set forth by the ALJ in the hypothetical question.   Plaintiff's assertion that he cannot do certain jobs because they contain restrictions of which he is not capable is not a compelling argument, because these restrictions were not found by the ALJ and therefore were not properly incorporated into Plaintiff's RFC. While Plaintiff may disagree with that assessment, the Court cannot find sufficient reason to disagree with it or to overturn it.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED:  September 16, 2011                        /s/
                                          VICTOR B. KENTON
                                          UNITED STATES MAGISTRATE JUDGE